CASE No. 1173.

## MILLS v. WILLIAMS.

1. A party seeking to impeach a contract because it was made on Sunday must show that it was done by a person in the exercise of the business of his ordinary calling. *Hellams* v. *Abercrombie,* 15 *S. C.* 110, approved.
2. A horse was sold at public auction under a mortgage, and purchased by a disinterested third person, and he, failing to comply, transferred his bid to the mortgagee, who took possession. There being no evidence to show fraud in the sale, or that the price paid was, at the time, inadequate, or that the mortgagee had resold at a profit, *held,* that the sale was valid.
3. A principal executed a sealed note, with her husband and two others as sureties, for a sum certain, expressed to be for "value received in mule," with the name of the payee left blank, and delivered it to her husband, as her agent, to purchase a mule from a certain drover whose name was forgotten. The husband used the note in the purchase of a horse of greater value from another person, giving his own obligation for the difference. *Held,* that as to the other parties to the note there was no delivery, and the husband was alone liable to the holder, even if no notice, other than that expressed in the note, was brought home to the holder that the note was intended for another person. *Gourdin* v. *Read,* 8 *Rich.* 230, recognized and followed.

2N

4. Knowledge by the principal and her other sureties that this horse had been purchased was no ratification of the delivery of the note, whether they knew of the use of the note for such purpose or not. Nor did the deposit by the principal of a sum of money with her sureties to save them harmless in this suit, nor a remark made by one of such sureties after action commenced, that the note would have been paid if not sued, amount to a ratification of the misappropriation of the note.

Before KERSHAW, J., Spartanburg, October, 1880.

The opinion states the case.

*Mr. J. S. R. Thomson,* for appellants.

*Messrs. Bobo & Carlisle,* contra.

March 15th, 1882. The opinion of the court was delivered by

McIVER, A. J. · This was an action on a note under seal, of which the following is a copy :

" By the first of November next, we or either of us, promise to pay        , or bearer, the sum of eighty-five dollars, value received in mule, this March 30th, 1879.

" Witness our hands and seals, with interest from date.
(Signed.)                    " DIANA WILLIAMS, [L. S.]
                             " A. J. WILLIAMS,   [L. S.]
                             " W. D. O'SHIELDS,  [L. S.]
                             " R. M. SMITH."     [L. S.]

The circumstances attending the signing of this note were as follows : Mrs. Diana Williams had contracted for the purchase of a mule from a certain drover, whose name she could not recall, and had agreed to give a note, with sureties, for the same. Accordingly, the above-mentioned note was signed by her as principal, with the other defendants as sureties, she, at the time, agreeing to secure her sureties from ultimate loss by a mortgage on the mule. Not remembering the name of the drover with whom the contract had been made, there was a blank left in the note for the name of the payee, and the note was delivered to

the defendant, A. J. Williams, the husband of Diana, for the purpose of being delivered to the drover and obtaining from him the mule.

A. J. Williams, however, in violation of the trust thus reposed in him, did not deliver the note to the drover, and did not obtain said mule, but, on the contrary, without any authority from the other signers of the note, delivered said note to the plaintiff, in part of the purchase-money of a horse, and gave a mortgage on the horse to secure an alleged balance of forty dollars. The defendants knew shortly afterwards that A. J. Williams had bought a horse from the plaintiff, but whether they knew that the aforesaid note had been used in settlement for the horse, did not appear.

It also appeared that when the note for forty dollars became payable, the plaintiff seized the horse under his mortgage, and sold him at public auction for fifty-five dollars, at which sale the defendant R. M. Smith was present. The purchaser at this sale having failed to comply with his bid, " sold said horse to L. A. Mills at same price, and Mills still owns the horse," (as is stated in the " case,") and the evidence was that the horse, at the time of the trial, was estimated to be worth from one hundred to one hundred and twenty-five dollars.

The plaintiff testified that when he sold the horse to A. J. Williams he had no notice of the arrangement between the defendants in regard to the purchase of the mule from the drover, and also, that the defendant Smith told him that they had the money to pay off the note, and would have done so if plaintiff had not brought suit. This money, it seems, had been placed in the hands of her sureties by Diana Williams to indemnify them in the suit, and was her own money.

The defendants requested the Circuit judge to charge as follows: "*First*, if, from the testimony, the jury believe that the defendants, Diana Williams, W. D. O'Shields and R. M. Smith, signed and sealed said note given to be filled out in favor of a certain person not a party to this proceeding, for a certain mule, and never gave consent that the same should be delivered to L. A. Mills or should be used in the purchase of a horse, then the verdict must be in favor of the defendants named. *Second*,

if the jury believe that the contract in this case was executed on Sunday, they must find a verdict for all of the defendants."

Both of these requests were refused, and the judge charged " that in order for Diana Williams, W. D. O'Shields and R. M. Smith to avoid the note, it was necessary for them to bring home notice to the plaintiff that the note was intended for another person, and that A. J. Williams was not authorized to deliver it to plaintiff. That a sealed note executed under the circumstances under which this was given could have been delivered to any person for any work animal, (though not, perhaps, for an entirely different species of property,) and that such transferee of note could recover thereon from all the signers thereof. That the circumstances under which the note was executed, and the fact that A. J. Williams delivered it for different property and to a different person than intended by the other signers, in no way relieved the defendants, or either of them, from their liability on said note. That the value of the horse at the time of mortgage sale by plaintiff must first go in payment of the mortgage note for forty dollars and interest, given by A. J. Williams to L. A. Mills, and the balance, if any, was applicable as a credit on said note sued on in this action. That the jury will not be authorized to presume from the date of the note that plaintiff sold the horse on Sunday. The presumption would be that he did not, as no person is presumed to do wrong. That the only direct testimony on this point was that of W. D. O'Shields, to the effect that he saw the horse on Tuesday, after Williams had purchased him from plaintiff on Saturday."

Judgment having been rendered for plaintiff, the defendants appeal, and we are called upon to determine whether there was any error on the part of the Circuit judge in refusing to charge as requested, or in any of the propositions of law laid down in the charge, to all of which exceptions were duly taken.

The appeal of the defendant, A. J. Williams, stands upon an entirely different footing from that of the other defendants, and we propose to consider his appeal first. He raises only two questions: *First*, whether the judge erred in refusing to charge that if the jury believed from the testimony that the contract, evidenced by the note, was made on Sunday, the plaintiff could

not recover. This court has recently decided, in the case of *Hellams* v. *Abercrombie,* 15 *S. C.* 110, that the mere fact that a contract was made on Sunday will not render it invalid, but that the party seeking to impeach it must go further and show that the contract was made by a person in the exercise of the business of his ordinary calling. Hence, in that case, a mortgage on real estate, executed on Sunday, which was given to indemnify a surety, was held valid. In this case there is no evidence tending to show that either of the parties in making this contract were in the exercise of the business of their ordinary calling, and, therefore, even if the contract had been made on Sunday, it would be a valid one. There was no error in this respect.

The next ground relied upon by A. J. Williams is, that the judge erred in instructing the jury that the value of the horse, at the time it was sold under the mortgage, must be first applied to the payment of the note for forty dollars, and only the balance, if any, was applicable to the note sued on. We are at a loss to conceive how A. J. Williams could object to this, for it was precisely in conformity to his contract with the plaintiff by which the horse stood pledged for the payment of that particular note, and, of course, the proceeds of the sale should first be applied to its payment. Judging from the argument here, however, the real point of this exception, which is not presented very distinctly in the " case " or the exceptions, seems to be that Mills was, in fact, the real purchaser at the sale under the mortgage, and that he could not legally become the purchaser at his own sale as mortgagee.

The case of *Black* v. *Hair & Black,* 2 *Hill Ch.* 622, is an authority to the contrary. Here, the sale was made at public auction, was attended by at least one of the other defendants, and the property was bid off by a disinterested third person. This, we think, in the absence of any evidence tending to show any fraud in the sale, or that the property brought less than its value *at that time,* sufficient to bring this case within the rule established by *Black* v. *Hair & Black, supra.* We do not see how, otherwise, the plaintiff could show that his purchase was fair, except by showing that the property was sold at public

auction, that third persons attended the sale, one of whom, at least, might be regarded as having an interest to make the property bring its full value, and that the property was bid off by a third person and his bid transferred to the mortgagee, for that is what we understand to be the effect of the statement made in the " case," " that the purchaser failed to comply with his bid, and sold said horse to L. A. Mills at same price." There is no evidence here, as there was in the case above cited, that the property brought an inadequate price, or that it was afterwards sold for a profit, for the fact testified to, that the horse was estimated to be worth more at a subsequent period, about a year afterwards, might be accounted for in various ways, and yet the sale was sustained in *Black* v. *Hair & Black.* This ground of appeal cannot be sustained.

The other defendants, in addition to the grounds already disposed of, take the further ground that the judge erred in charging the jury, that, to enable these defendants to escape liability on this note, it was necessary to satisfy the jury that the plaintiff had notice, when he took the note from A. J. Williams, that it was intended for another person, and that A. J. Williams did not have authority to deliver it to the plaintiff, and that, in the absence of such notice, the circumstances under which, and the purposes for which the note was signed and delivered to A. J. Williams, already detailed, would not relieve these defendants from liability on the note. It will, of course, be conceded that the mere signing of the note in question would not, of itself, impose any liability upon those who signed it. Until it was *delivered,* the contract which it was intended to evidence was inchoate and not complete, and, therefore, the case really turns upon the question, whether these defendants ever delivered the note to the plaintiff. They certainly never intended to do so, and, on the contrary, intended that the note should be delivered to another person for a different piece of property which was mentioned in the note, though the name of the person for whom it was intended was left blank, and was, therefore, uncertain.

The practical inquiry, therefore, is, whether a person who entrusts a sealed note, with the name of the payee left blank, to an agent for the purpose of being delivered to one person, in

exchange for a particular piece of property specified in the note, is bound by the act of the agent who delivers the note to another person for a different piece of property, unless the person to whom the note was actually delivered had notice, at the time, of this departure from his instructions on the part of the agent.

This question, we think, is settled by the decisions of the former Court of Appeals in this State, in the case of *Gourdin* v. *Read*, reported first in 6 *Rich.* 497, and again in 8 *Rich.* 230. In that case, Read, for the purpose of assisting one Commander, signed with him, as surety, a joint and several bond, leaving the date and the name of the obligee blank, with the understanding that when Commander found some one willing to lend money on that security he was to fill the blanks, and with the money borrowed he was to purchase slaves and give Read a mortgage on them to indemnify him against any loss by reason of his suretyship. Commander borrowed money from Gourdin and delivered to him this bond as collateral security, after first filling in the name of Gourdin as obligee and the date, but, instead of applying the money to the purchase of slaves, he used it for the payment of his debts. The Circuit judge charged the jury that the question in the case was a mere question of fact—"Whether Commander was authorized by Read to fill up the blanks in the bond and to use the same when complete as he had done?"

On appeal, it was held, amongst other things, that the latter part of this charge was calculated to mislead the jury into supposing that the fact that Commander had used the money obtained on the bond in a manner different from that intended by Read, would discharge Read, and that if Read had, by parol or otherwise, authorized Commander to fill the blanks in the bond with the name of any person from whom he could borrow the money, he would be liable, even though Commander had not applied the money to the purpose understood between them at the time the bond was signed.

On the next trial, Read set up a new defense, based upon the allegation that he had revoked the authority originally given to Commander to fill the blanks in the bond and negotiate it before the money was borrowed from Gourdin. At the hearing below, the jury were instructed that, even if Commander's

authority had been revoked, this would not discharge Read, unless Gourdin had notice of such revocation before he loaned the money to Commander, but, on the second hearing in the Court of Appeals, it was held that no such notice was necessary, and that, if Commander's authority was revoked before the money was loaned, then Read would be discharged, even if Gourdin had no notice of such revocation. In delivering the opinion of the court, Withers, J., uses this language : " Gourdin's title rests upon the fact of the existing power of Commander at the time he inserted his name as obligee and delivered it, to do that as the act of Read. * * * * The plaintiff judged of the creation and the continued existence of Commander's authority from the circumstances before him. He also took the risk of its revocation from a view of the same circumstances. Whether he had notice of its revocation does not affect the question."

This is much stronger than the case now before the court. There, the surety had originally invested the principal with authority to fill the blank in the bond with the name of *any* person from whom he could borrow the money, and yet, although the bond was left in the possession of the principal, it was held that if such authority was revoked, the surety would be discharged, even though the person who loaned the money had no notice that such authority had been revoked. Here, however, the person who delivered the note to the plaintiff never *had any authority* to do so, but, on the contrary, his instructions were to deliver it to another person, for a particular thing *specified in the note*, and his delivery to the plaintiff was wholly unauthorized, and cannot bind these defendants.

They certainly never in person made any contract with the plaintiff, and, if it is sought to bind them by a contract made through their agent, the plaintiff must show that the act of the agent was within the scope of his authority. The very fact that the note contained in itself the evidence that it was intended to be given for a mule, was sufficient to show that there was not even any apparent authority conferred upon A. J. Williams by the possession of the note, with the name of the payee left blank, to fill the blank with the name of *any* person to whom

he might choose to deliver it, for that showed that there had been a previous negotiation with some person for the purchase of the particular property specified in the note at the price therein named.

The plaintiff cannot claim that he was induced to take the note by the *apparent* authority which the possession of the note seemed to give A. J. Williams to fill the blank, for he must have known that he was not the person with whom there had been a previous negotiation for the purchase of a mule for the sum for which the note was given. We think, therefore, that the judge erred in charging the jury that these defendants would be liable on the note, unless notice was brought home to the plaintiff that the note was intended for another person, and that A. J. Williams was not authorized to deliver it to the plaintiff.

It is urged, however, that even if A. J. Williams had no authority originally to deliver the note to the plaintiff, yet that his act in doing so has been subsequently ratified by these defendants, and they are, therefore, bound by it. There is no doubt that subsequent ratification of the unauthorized act of the agent, by the principal, will make such act the act of the principal, so far as to bind him to the same extent as if the agent had been originally invested with authority to do the act. But we are unable to see anything in this case to warrant the application of this principle. It does not appear that the defendants, whose appeal we are now considering, did, by any word or act, ratify the action of A. J. Williams in using the note for the purchase of a horse for his own benefit. The testimony goes to show that they knew that he had purchased the horse, but there is no evidence that they knew that this note had been used for that purpose, until about the time this controversy arose, and even if they had known it we do not see how this could be regarded as any ratification of the act of A. J. Williams. He had a perfect right to buy a horse, and if the person from whom he purchased was careless enough to take a worthless note in exchange for the horse, we do not see how this could affect these defendants. They appear to have denied their liability as soon as they were called upon to pay the note, and we do not see what more they could have been expected to do.

The fact that Mrs. Diana Williams deposited with her sureties money to the amount of the note, to indemnify them against any loss they might sustain by this suit, was certainly no confirma- tion of the act of her husband in appropriating the note to a purpose other than that for which it was intended. She had agreed, if they would, by becoming her sureties, enable her. to buy a mule, that she would indemnify them by a mortgage on the mule, and having failed to get the mule, and not knowing what might be the result of the threatened suit on the note, she very properly resorted to other means to indemnify them.

So, too, the statement made by R. M. Smith to the plaintiff that " they had the money to pay off the note, and would have done so if plaintiff had not sued," cannot amount to anything, for the form of the expressions show that this remark was made after the suit was commenced.

The judgment of this court is that the judgment of the Circuit Court, so far as it affects the defendant A. J. Williams, be affirmed, and so far as it affects the other defendants, that it be reversed, and that the case be remanded to the Circuit Court for a new trial as to all the defendants except A. J. Williams.

SIMPSON, C. J., and McGOWAN, A. J., concurred.